IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

FILED

OCT 0 4 2019

Clerk, U S District Court
District Of Montana
Missoula

| | |
|---|---|
| MICHAEL T. ANDERSON, | Cause No. CV 19-95-M-DLC-KLD |
| Plaintiff, | |
| vs. | ORDER and FINDINGS AND RECOMMENDATION OF U.S. MAGISTRATE JUDGE |
| SCOTT BRODIE; JOHN DOE; JANE DOE, | |
| Defendants. | |

On June 6, 2019, Plaintiff Anderson moved to proceed in forma pauperis with this action under 42 U.S.C. § 1983 alleging violation of his rights under the Fourth and Fourteenth Amendments. On June 7, 2019, he submitted an amended complaint (Doc. 6) and a notice[1] identifying the amendments he made (Doc. 5). On June 14, he moved the Court, *ex parte*, to allow him to obtain a docket sheet at public expense on request to the clerk's office (Doc. 7).

I. **Motion to Proceed In Forma Pauperis**

Anderson's motion is unconventional. Unlike other applicants, he has not disclosed his income and expenses. He does, however, represent that he receives assistance through the Supplemental Nutrition Assistance Program. *See* Mot.

---

[1] This notice was not required, but it was helpful. The Court appreciates Anderson's clarity.

1

(Doc. 1) at 2. Presumably, he has submitted appropriate financial documentation to a state or federal authority that is obliged to verify his financial means. On this occasion, the Court will rely on that determination and grant Anderson's motion to proceed in forma pauperis.

## II. *Ex Parte* Motion for Docket Sheets

On June 18, 2019, United States Magistrate Judge Jeremiah C. Lynch entered an order denying Anderson's *ex parte* motion to allow him to obtain copies of docket sheets at public expense. *See* Text Order (Doc. 8). Because the undersigned is new to the case, it seems appropriate to explain why the clerk is not required to provide free docket sheets.

Anderson's motion states that he intends to use the docket sheet "because it is easier to use the abbreviated description of the subject matter of the document" than the docket number. *See Ex Parte* Mot. (Doc. 7) at 3. This is understandable and, frankly, the Court agrees the docket text is useful.

Anderson consented to electronic service.[2] *See* Notice and Consent (Doc. 3) at 1. When the clerk receives and files a document, the Court's electronic filing system generates a notice of electronic filing ("NEF") that is delivered to Anderson by email. That email provides a link to the document, which Anderson may print

---

[2] It appears that Anderson's request for leave to file by email (Doc. 4) was inadvertently overlooked. The clerk will address the request.

2

or save to an electronic file. The document has the case number, the docket number of the document, and the date and time of filing stamped across the top of each page. In addition, the email itself consists of the NEF, which includes the docket entry corresponding to the document. Consequently, by saving his emails, Anderson always has access to the docket entry corresponding to each document, and that is the information he seeks. *See Ex Parte* Mot. (Doc. 7) at 3. When Anderson agreed to be served by email, the clerk recognized that he did not have NEFs for documents filed on or before the date of his agreement. The clerk regenerated the NEFs corresponding to those documents and resent them to Anderson so that he would have the docket text corresponding to those documents as well.

Anderson already has and will receive on an ongoing basis the information he requests. He does not also need the clerk to stop whatever other task is at hand to respond to his requests by taking a snapshot of the docket, saving it, and emailing it to him.

The Court notes that Anderson filed his motion *ex parte*. There is no reason for the motion to be filed under seal. It will be filed in the public docket, except that the Court will hold the photograph of Anderson's residence (Doc. 7-2 at 1–2) under seal. It appears possible Anderson filed the motion *ex parte* to protect the privacy of that photograph.

3

### III. Screening of Complaint

Because Anderson is proceeding in forma pauperis, the Court is required to review his complaint to determine whether it fails to state a claim on which relief may be granted. *See* 28 U.S.C. § 1915(e)(2)(B)(ii).

Anderson is also self-represented. "A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (internal quotation marks and citation omitted). Courts must briefly explain deficiencies that may be cured by amendment, *see Akhtar v. Mesa*, 698 F.3d 1202, 1212 (9th Cir. 2012), but if a claim cannot be cured by amendment, "the court *shall* dismiss" it, 28 U.S.C. § 1915(e)(2) (emphasis added).

### IV. Claims and Analysis

#### A. Anderson's Allegations of Fact

At this stage of the proceedings, the Court assumes Anderson's allegations of fact are true. He describes the following course of events.

On September 14, 2018, Anderson was seated in the Commons area of the University Center on the campus of the University of Montana, editing a paper. A female custodian, Jane Doe, approached, put a copy of the UM tobacco policy on his table, and told Anderson he could not chew tobacco on campus. *See* Am.

4

Compl. (Doc. 6) at 4 ¶¶ 11–12.

About 20 minutes later, two UM campus police officers, Defendants Brodie and John Doe, approached his table and asked to see identification. Anderson, in turn, asked them to explain what reasonable suspicion caused them to believe he was committing a crime. Anderson also informed them they could not detain him based on the UM tobacco policy. Anderson declined to produce identification. Brodie and Doe escorted Anderson off campus and told him he could return the next day. *See id.* at 5 ¶¶ 14–16.

The following evening, September 15, 2018, Anderson was sitting at the same table when Brodie and Doe approached him again. This time, they told him they had found record of two misdemeanor arrest warrants in his name. They permitted Anderson to gather his belongings and drop them off at a friend's house before taking him to jail on the warrants. *See id.* at 5–6 ¶¶ 17–18.

Anderson attached to his amended complaint a copy of the UM tobacco policy. It provides, in part, that "Visitors, guests, and contractors who do not comply with this policy will be asked to leave campus." Am. Compl. Ex. 1 at 1 (Doc. 6 at 15). Anderson also attached a printout of a "Booking Card" from the Missoula County Sheriff's Office showing his photograph and arrest history, *see* Am. Compl. Ex. 2 at 1 (Doc. 6 at 17), and what appears to be a printout of the warrants check, *see* Am. Compl. Ex. 3 at 1–2 (Doc. 6 at 19–20). (A more legible

5

copy is attached to the original complaint, Doc. 2 at 19–20).

## B. Fourth Amendment

### 1. Initial Request for Identification

Anderson contends that Brodie and Doe violated the Fourth Amendment by "unlawfully detaining him and trying to learn his identity because of a complaint from Defendant Jane Doe about Plaintiff'[s] alleged tobacco use (chewing)." Am. Compl. (Doc. 6) at 9 ¶ 31.

"The Fourth Amendment does not proscribe all contact between the police and citizens." *INS v. Delgado*, 466 U.S. 210, 215 (1984). The case Anderson cites, *Hiibel v. Sixth Jud. Dist. Court*, 542 U.S. 177 (2006), does not say what he believes it says. The majority observed, "In the ordinary course a police officer is free to ask a person for identification without implicating the Fourth Amendment. '[I]nterrogation relating to one's identity or a request for identification by the police does not, by itself, constitute a Fourth Amendment seizure.'" *Id.* at 185 (quoting *Delgado*, 466 U.S. at 216). "Unless the circumstances of the encounter are so intimidating as to demonstrate that a reasonable person would have believed he was not free to leave if he had not responded, one cannot say that the questioning resulted in a detention under the Fourth Amendment." *Delgado*, 466 U.S. at 216.

The circumstances Anderson describes were not intimidating. He does not

6

allege that Brodie or Doe used unreasonable (or any) force in attempting to learn his identity, that they spoke loudly or threatened him, or that they engaged in any physically intimidating behavior. A reasonable person would have felt, just as Anderson did, free to decline to produce identification. The Court can only find that the officers' request for identification did not violate the Fourth Amendment.

### 2. Escort Off Campus

It is not clear whether Anderson means Brodie and Doe instructed him to leave, or he chose to leave and they accompanied him. *See* Am. Compl. at 5 ¶ 16.

Regardless, "[a] university differs in significant respects from public forums such as streets or parks or even municipal theaters." *Widmar v. Vincent*, 454 U.S. 263, 267 n.5 (1981). Courts have never required "that a campus must make all of its facilities equally available to students and nonstudents alike, or that a university must grant free access to all of its grounds or buildings." *Id.* "Not only must a university have the power to foster an atmosphere and conditions in which its educational mission can be carried out, it also has a duty to protect its students by imposing reasonable regulations on the conduct of those who come onto campus." *Souders v. Lucero*, 196 F.3d 1040, 1045 (9th Cir. 1999). The university's "power appropriately to protect itself and its property," *id.* (quoting *Healy v. James*, 408 U.S. 169, 192 (1972)), necessarily includes a right to know who is on its campus.

Anderson does not allege that he was a student, was invited to campus, was

7

attending a lecture or event open to the public, or worked at UM. *See* Am. Compl. at 4 n.3. Consequently, there is no reason to suppose he had a "constitutionally protected interest in having access to the University." *Souders*, 196 F.3d at 1046. But even if he was a student or had another claim of some right to be there, he had no legally cognizable right to be *incognito*. His presence on campus, combined with his refusal to identify himself when asked to do so, warranted Brodie's and Doe's conduct in staying with him until he was off campus or until they were reasonably sure he posed no cause for concern. Their statement that he was free to return the following night struck an appropriate balance between their need to assess whether he posed a risk and the fact that his conduct—apart from his refusal to identify himself—had not implicated the university's legitimate interests in the peace and safety of its campus.

Again, Anderson's allegations support only a conclusion that the Defendants did not violate the Fourth Amendment by escorting him off campus.

### 3. Criminal Investigation

Anderson asserts that his lawful refusal to identify himself prompted Brodie and Doe to "conduct a criminal investigation into Plaintiff to learn his true identity" and then check for any outstanding warrants for his arrest. *See* Am. Compl. at 9–10 ¶ 32.

The Court is not aware of any law prohibiting officers from taking steps to

determine someone's identity or conditioning their access to routinely available databases, other officers' knowledge, or other sources of identifying information on a showing of reasonable suspicion. Anderson was not asked to submit to a photograph or scan that would subsequently accompany a record of significant information about him and his movements, as facial recognition software at an airport might do. He had no reasonable expectation that either his outward physical appearance or the officers' memory of it would be kept private. *See Katz v. United States*, 389 U.S. 347, 351 (1967); *cf. INS v. Lopez-Mendoza*, 468 U.S. 1032, 1039 (1984) ("The 'body' or identity of a defendant or respondent in a civil or criminal proceeding is never itself suppressible as a fruit of an unlawful arrest, even if it is conceded that an unlawful arrest, search, or interrogation occurred.").

No Fourth Amendment claim arises from the routine acts Anderson labels a "criminal investigation."

### 4. Conclusion

Anderson's allegations do not support an inference that any of the Defendants violated his rights under the Fourth Amendment. His first cause of action fails to state a claim on which relief may be granted.

### B. Fourteenth Amendment

Anderson contends the Defendants violated the Fourteenth Amendment "by depriving him of the liberty to remain in a public place, because Defendants

9

illegally detained and then conducted a criminal investigation into him without any reasonable suspicion" of criminal activity. He also claims "the subsequent criminal investigation into him in regards to his identity and arrest for 2 misdemeanor warrants" violated the Fourteenth Amendment. Am. Compl. (Doc. 6) at 10–11 ¶ 37.

The Constitution prohibits States from depriving people of liberty without due process of law. *See* U.S. Const. Amend. XIV, § 1. But, to be entitled to due process, a person must have a liberty interest that is protected by State or federal law. Like the plaintiff in *Souders*, *see* 196 F.3d at 1046, Anderson has not shown that he had a protected liberty interest in being on the campus without disclosing his identity. Therefore, he cannot show that he was deprived of such an interest without due process.

It does not appear that Anderson claims a violation of the "substantive due process" facet of the Fourteenth Amendment, but if he does, his allegations fall far short of the necessary standards. *See County of Sacramento v. Lewis*, 523 U.S. 833, 836 (1998). Even if Defendants' concern was *unreasonable*—and it appears it was only mistaken—there is no reason to suppose they acted with a "purpose to cause harm" to Anderson or anyone else. Neither asking a person on a college campus for identification nor arresting a person on outstanding warrants can be called "arbitrary" or "shocking to the conscience," and the circumstances Anderson

describes do not advance his cause. Brodie's and Doe's actions were unremarkable.

Anderson's second cause of action also fails to state a claim on which relief may be granted.

### C. Negligence

Anderson's cause of action for negligence against Defendants Brodie and Doe does not appear strong. *See* Am. Compl. (Doc. 6) at 11 ¶¶ 41–44. But if it fairly states a claim, it is a novel one. And, as explained above, Anderson's Fourth and Fourteenth Amendment claims under 42 U.S.C. § 1983 should be dismissed. The Court should therefore decline to exercise supplemental jurisdiction over the negligence claim. *See* 28 U.S.C. § 1367(c)(1), (3).

If the district court adopts the Recommendation below and declines supplemental jurisdiction, Anderson may file his negligence claim anew in state court. *See, e.g., Artis v. District of Columbia*, __ U.S. __, 138 S. Ct. 594, 597–99, 608 (2018).

### V. Opportunity to Amend

The Court has considered whether Anderson could state a viable claim under 42 U.S.C. § 1983 if given an opportunity to allege additional facts. But the facts he alleges simply do not amount to constitutional violations. His federal claims cannot be cured by amendment.

11

Based on the foregoing, the Court enters the following:

## ORDER

1. Anderson's motion to proceed in forma pauperis (Doc. 1) is GRANTED. The clerk shall waive the filing fee and edit the docket text to show that the Complaint (Doc. 2) and Amended Complaint (Doc. 6) are filed.

2. The clerk shall make Anderson's *ex parte* motion (Doc. 7) available in the public record, except that Exhibit 2 (Doc. 2-2) shall remain under seal.

The Court also enters the following:

## RECOMMENDATION

1. Anderson's federal constitutional claims should be DISMISSED for failure to state a claim on which relief may be granted.

2. The Court should decline supplemental jurisdiction over Anderson's negligence claim against Defendants Brodie and Doe.

3. The clerk should be directed to enter, by a separate document, a judgment of dismissal.

4. The Court should CERTIFY, pursuant to Federal Rule of Appellate Procedure 24(a)(4)(B), that an appeal would not be taken in good faith.

## NOTICE OF RIGHT TO OBJECT TO FINDINGS & RECOMMENDATION AND CONSEQUENCES OF FAILURE TO OBJECT

Anderson may object to this Findings and Recommendation within 14 days.

*See* 28 U.S.C. § 636(b)(1). Failure to timely file written objections may bar *de novo* review by the district judge and/or waive the right to appeal.

Anderson must immediately advise the Court of any change in his email address. Failure to do so may result in dismissal of this action without notice to him.

DATED this 4th day of October, 2019.

Kathleen L. DeSoto
United States Magistrate Judge