IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION



FILED

NOV 2 7 2019

Clerk, U.S. District Court
District Of Montana
Missoula

| | |
|---|---|
| MICHAEL T. ANDERSON, <br><br> Plaintiff, <br><br> vs. <br><br> SCOTT BRODIE; JOHN DOE; JANE DOE, <br><br> Defendants. | CV 19–95–M–DLC–KLD <br><br><br> ORDER |

Before the Court is Plaintiff Michael T. Anderson's ("Anderson") Amended Complaint. (Doc. 6.) On October 4, 2019, United States Magistrate Judge Kathleen L. DeSoto entered her Order and Findings and Recommendation ("F&R"). (Doc. 11.) There, she recommended that the Court dismiss Anderson's federal constitutional claims and, in turn, that it decline supplemental jurisdiction over his negligence claim. (*Id.*) Anderson moved for an extension to file his objections, and the Court granted his motion. (Doc. 14.) Pursuant to the extension, Anderson timely filed his objections to the F&R on November 4, 2019. (Doc. 15.)

Anderson is entitled to de novo review of those findings to which he specifically objects. 28 U.S.C. § 636(b)(1)(C). Absent objection, the Court

reviews findings and recommendations for clear error. *United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003) (en banc); *Thomas v. Arn*, 474 U.S. 140, 149 (1985). Clear error is "significantly deferential" and exists if the Court is left with a "definite and firm conviction that a mistake has been committed." *United States v. Syrax*, 235 F.3d 422, 427 (9th Cir. 2000) (citations omitted).

## BACKGROUND [1]

On September 14, 2018, Anderson was chewing tobacco[2] in the commons of the University of Montana's University Center ("the U.C.") when Defendant Jane Doe, a University of Montana ("U.M." or "the University") custodian, handed him a copy of the University's tobacco policy. (Docs. 6 at 4; 15 at 11.) The policy, attached to Anderson's Amended Complaint, states that U.M. prohibits tobacco use on its property and clarifies that "tobacco" includes smokeless or spit tobacco. (Doc. 6 at 15.) Furthermore, it warns that "visitors, guests, and contractors who do not comply . . . will be asked to leave the campus." (*Id.*) After delivering the paper policy to Anderson, Jane Doe verbally iterated the University's tobacco prohibition to him. (*Id.* at 4.) Anderson does not deny that he was chewing tobacco. (*See* Doc. 15 at 11, 18.)

---

[1] As discussed *infra*, at this stage in the proceedings, the Court accepts all factual allegations in Anderson's Amended Complaint as true. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).
[2] Anderson states in his objections that he "was doing nothing more than chewing tobacco." (Doc. 15 at 11.) Therefore, and because Anderson never alleges in his Amended Complaint (Doc. 6) that Jane Doe's observation was mistaken, the Court assumes that he was chewing tobacco in the University Center commons on September 14, 2018.

About twenty minutes after Jane Doe warned Anderson about U.M.'s tobacco prohibition, University police officers Scott Brodie and John Doe (collectively, "the Officers," or "Brodie and Doe"), approached Anderson and asked him for identification. (*Id.* at 5.) Anderson refused. (*Id.*) As they escorted him from campus, the Officers assured Anderson that he was "free to come back tomorrow." (*Id.*) When Anderson returned to campus the next day, the Officers again approached him. (*Id.* at 6.) This time, they informed Anderson that they had discovered two misdemeanor warrants for his arrest. (*Id.*) Pursuant to the warrants, the Officers arrested Anderson. (*Id.*)

## DISCUSSION

As a preliminary matter, Court notes that Anderson is proceeding *pro se* and in forma pauperis. (*See* Doc. 11 at 1–2.) Accordingly, the Court conducts its review of Anderson's claims aware that "a document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (internal quotation marks and citation omitted).

Still, the Court must dismiss a case filed in forma pauperis "if the court determines that [] the action . . . [] fails to state a claim on which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii). To meet its § 1915(e) screening

obligation, the Court "employ[s] the same standard used to test the sufficiency of a complaint under Federal Rule of Civil Procedure 12(b)(6)." *Lucas v. Jovanovich*, No. CV 15–76–H–DLC–JTJ, 2016 WL 3267332, at *2 (D. Mont. June 10, 2016) (citing, *inter alia, Lopez v. Smith*, 203 F.3d 1122, 1126 n. 7 (9th Cir. 2000) (en banc)). Therefore, to survive dismissal at this stage, with the Court accepting all its factual allegations as true, Anderson's Amended Complaint must "state a claim to relief that is plausible on its face." *Ashcroft*, 556 U.S. at 678.

Anderson alleges that the Officers'[3] conduct constitutes violations of his Fourth and Fourteenth Amendment rights. (Doc. 6 at 8–10.) He additionally asserts that Brodie and Doe acted negligently. (*Id.* at 11–12.) Judge DeSoto recommended dismissing Anderson's constitutional claims and declining to exercise supplemental jurisdiction over his negligence claim. In response, Anderson raises four objections. The Court will address Anderson's claims and corresponding objections to the F&R in turn.

I. **Fourth Amendment**

Anderson claims that the Officers violated his Fourth Amendment rights when they "detain[ed] him and tr[ied] to learn his identity" after receiving a

---

[3] Although Plaintiff names Jane Doe, the U.M. custodian, as a defendant, he does not allege that any of her conduct was unconstitutional or negligent. Instead, her role in this case appears to be limited to initiating a chain of allegedly unlawful events when she complained about his on-campus tobacco use to defendants Brodie and John Doe. Therefore, because Plaintiff fails to assert a claim against defendant Jane Doe, the Court will not endeavor to find one for him.

complaint from Jane Doe. (Doc. 6 at 9.) Specifically, they allegedly violated the Fourth Amendment when they investigated Anderson's identity by running a warrant search. (*Id.*) In the Amended Complaint, Anderson treated the Fourth Amendment claim holistically, entitling it "Detention/Investigation of Plaintiff." (Doc. 6 at 9.) In her Findings and Recommendation, Judge DeSoto divided the claim into three, temporally-based parts. (Doc. 11 at 6–9.)

First, finding neither a proscription against all contact between police and citizen, nor intimidating circumstances surrounding the Officers' initial identification request, Judge DeSoto rejected Anderson's claim that the Officers unconstitutionally "demanded he produce identification." (Docs. 11 at 7; 6 at 5.) Anderson objects to this finding by highlighting inapposite portions of the relevant cases, including, inter alia, *I.N.S. v. Delgado*, 466 U.S. 210, 215 (1984) and *Hiibel v. Sixth Judicial District Court*, 542 U.S. 177 (2006), and makes explicit an argument to which he only previously alluded in his Amended Complaint.[4] (Doc. 6 at 11.)

---

[4] The Court reviewed the initial identification request issue de novo and agrees with Judge DeSoto's conclusion. (Doc. 11 at 7.) Despite Anderson's assertion that an officer unlawfully "accost[s]" an individual by requesting identification, neither the facts he alleges nor the Supreme Court's analysis of similar requests support this characterization. Consistent with the F&R, the Court's conclusion on this issue iterates the Supreme Court's in *Hibbel*: standing alone, Brodie and Doe were "free to ask [Anderson] for identification without implicating the Fourth Amendment." 542 U.S. at 185.

Anderson argues that because "chewing tobacco in the State of Montana is perfectly legal," the Officers' conduct, starting with their request for his identity, was without justification. (Doc. 15 at 2, 7–8.) In other words, he contends that university policies fail to qualify as legitimate, enforceable government interests; therefore, when he violated U.M.'s policy by "doing nothing more than chewing tobacco," the Officers should have simply left him alone. (*Id.* at 7–8, 11.) Even though, as already explained, the Officers' request did not implicate the Fourth Amendment— let alone violate it—the Court nevertheless will address this argument, since it serves as a common basis for the entirety of Anderson's objections.

Anderson sets forth no authority that a public university must rely on a statute or ordinance to establish a policy or that such a policy is not enforceable on its own. *Cf. Spears v. Ariz. Bd. Of Regents*, 372 F.Supp.3d 893, 912 (D. Ariz. 2019). Instead, because "a university's mission is education, [courts] have never denied a university's authority to impose reasonable regulations compatible with that mission upon the use of its campus and facilities." *Widmar v. Vincent*, 454 U.S. 263, 268, n.5 (1981). To that end, a university may rely on its police to maintain order and enforce its policies, even if the policy violations themselves "pose no threat[.]" *Felarca v. Birgeneau*, 891 F.3d 809, 818 (9th Cir. 2018) (citing *Forrester v. City of San Diego*, 25 F.3d 804, 807 (9th Cir. 1994)).

For example, in *Felarca*, the Ninth Circuit found a legitimate government interest in university police officers' application of "minimal force to maintain order and enforce university policy." 891 F.3d at 818. There, University of California, Berkeley policy forbade outdoor encampments, and the officers used their batons to apply "minimal force" to enforce the prohibition. *Id.* Nothing in *Felarca* indicates and the Court seriously doubts that outdoor camping is, in general, anything but "perfectly legal" in the state of California. (*See* Doc. 15 at 2.)

Therefore, the Court rejects Anderson's argument that, unlike state or local laws, the tobacco policy that he violated is unenforceable simply because the University promulgated it. To the contrary, the University may rely on its police officers, like Brodie and Doe, to maintain order and enforce its policies, notwithstanding Anderson's opinion that chew tobacco poses no threat. Accordingly, the Court finds U.M.'s tobacco policy to be an enforceable government interest on equal footing with any other prohibitory law, insofar as its enforceability on University property. Accordingly, after reviewing the constitutionality of the Officers' identification request de novo, and considering Anderson's first specific objection, the Court agrees with Judge DeSoto's finding on the issue. (*See* Doc. 11 at 6–7.)

The Court next turns to what Judge DeSoto characterized as the second Fourth Amendment issue presented. (Doc. 11 at 7.) Because Anderson labelled the Officers' subsequent act in the chain of events as an "escort," Judge DeSoto understandably analyzed it as the unconstitutional "detention" he alleges. (Doc. 11 at 7.) She concluded that Anderson's presence on campus, combined with his refusal to identify himself, warranted the Officers' conduct in staying with him until he was off campus. (Doc. 11 at 8.) That Judge DeSoto analyzed the constitutionality of the "escort" at all appears to form the basis for Anderson's second objection.

There, Anderson clarifies that his claims are unrelated to the escort off campus: "Plaintiff never pleaded a [c]laim in his Amended Complaint involving the (sic) being '*escorted*' off of [the University] campus[.]" (Doc. 15 at 10.) Nevertheless, he argues that even if his removal from campus did form the basis of his Fourth Amendment claim, he would be successful based on his theory that university policies carry no power of enforcement. (*Id.* at 11.) As the Court has already explained, it finds this theory unpersuasive. So, because Anderson's objection on this issue amounts to a general clarification that his claim is unrelated to the escort, the Court reviewed Judge DeSoto's finding for clear error and found none.

Finally, Judge DeSoto found no Fourth Amendment violation arose from the Officers' routine search of the warrant database based on their memories of Anderson's physical appearance, despite his labelling the search a "criminal investigation." (Doc. 11 at 9.) Anderson does not specifically object to this finding, and accordingly, the Court reviews it for clear error.

What Anderson "knowingly exposes to the public . . . is not a subject of Fourth Amendment protection." *Katz v. United States*, 389 U.S. 347, 352 (1967). The conduct that Anderson characterizes as a "criminal investigation" appears to amount to the Officers comparing their memories of his physical appearance—which he knowingly exposed to the public when he sat in the U.C. commons—to photographs in a routinely accessed warrant database. Therefore, like Judge DeSoto, the Court finds that, under *Katz* and its progeny, Anderson harbored no reasonable expectation of privacy in his outward physical appearance or the Officers' memory of it.

Accordingly, the Court finds no error in Judge DeSoto's conclusion on this third and final part of her Fourth Amendment analysis. As such, the court concludes that Anderson fails to state a Fourth Amendment claim for which relief may be granted.

## II. Fourteenth Amendment

In the Amended Complaint, Anderson claims that the Officers violated his Fourteenth Amendment rights by depriving him of "[t]he freedom to remain in a public place for innocent purposes," which he asserts "is part of the liberty protected by the Due Process Clause." (Doc. 6 at 10.) Judge DeSoto rejected this claim after failing to find a protected liberty interest to which the due process guarantee would attach. (Doc. 11 at 10.) She went on to note that, although Anderson's Fourteenth Amendment claim did not appear to involve substantive due process, even if it did, his allegations could not survive dismissal. (*Id.*)

Anderson objects, first by stating that Judge DeSoto misconstrues his complaint, because he "never pleaded a [c]laim in his Amended Complaint involving . . . having a '*constitutionally-protected interest*' to utilize the [University's] facilities/resources." (Doc. 15 at 10 (emphasis in original).) Instead, he again advances his theory that his violation of the University's tobacco policy failed to provide the Officers with any basis for approaching him initially or "investigating" his identity afterward. (*Id.* at 11–12.) As already explained, the Court finds this line of reasoning unpersuasive.

Even though the Amended Complaint does not allege a constitutionally-protected interest, Anderson now urges the Court to find one under the First Amendment. (*Id.* at 15.) Relying on a case involving a school board's removal of

library books, Anderson asserts that his constitutionally-protected liberty interest in being on campus and refusing to identify himself rests on his First Amendment rights to "receive information" and access to the courts. (*Id.* at 12–16.)

As a preliminary matter, the Court finds *Island of Trees Union Free School District No. 26 v. Pico*—the case to which Anderson quotes and cites extensively in support of his receipt of information argument—inapposite to the circumstances in this case.[5] (*See id.* at 12–14.) Furthermore, Anderson fails to cite to any authority supporting his contention that the right to access to the courts includes the right to access Westlaw. (*Id.* 15–16.) And, Anderson does not allege that the scope of his removals from campus extended beyond the Officers' enforcement of University policy and execution of outstanding arrest warrants.

Setting aside these general observations, though, the Court notes that Anderson raises these First Amendment arguments for the first time in his objections. That is, Judge DeSoto had no opportunity to consider these issues. Based on Anderson's self-proclaimed experience with the federal courts (*see* Doc.

---

[5] There, the Court focused on the narrow issue of whether a school board may remove books from the school library's shelves "simply because they dislike the ideas contained in those books." 457 U.S. 853, 872 (1982). Nothing in the facts alleged here indicates that the Officers acted to suppress Anderson's dissemination or receipt of ideas. And, as the *Pico* Court notes, "courts should not intervene in the resolution of conflicts which arise in the daily operation of school systems unless basic constitutional values are directly and sharply implicated in those conflicts." 457 U.S. at 865 (citation and internal quotation marks omitted). The Court fails to see how the Officers' enforcement of the anti-tobacco policy and their subsequent execution of unrelated arrest warrants directly and sharply implicate Anderson's First Amendment rights.

15 at 12, n.3.), he undoubtedly is aware that the Court will not consider new legal arguments raised in the objections to a magistrate's findings and recommendation.[6] *Greenhow v. Sec'y of Health and Human Servs.*, 863 F.2d 633, 638 (9th Cir. 1988). The purpose of the Magistrates Act is not "to give litigants an opportunity to run one version of their case past the magistrate, then another past the district court." *Id.* Because his First Amendment argument is not properly before the Court, it will decline to reach an opinion on the merits of this freshly-hatched theory.

Because Anderson's objections to Judge DeSoto's resolution of his Fourteenth Amendment claim amount to either rehashing his university-policy-is-unenforceable theory or advancing First Amendment theories for the first time, the Court reviews the magistrate's findings for clear error. "While the [U.M.] campus may be open to the public, it does not follow that the University must allow all members of the public onto its premises regardless of their conduct." *Souders v. Lucero*, 196 F.3d 1040, 1044 (9th Cir. 1999). Like the *Souders* case, "there is no

---

[6] For the same reason, the Court will not address the fourth and final argument that Anderson raises for the first time in his objections. That is, the defendants' handling of his tobacco policy violation ran contrary to University protocol. (Doc. 15 at 16–19.) Be that as it may, the Court notes that, pursuant to language Anderson cites, his summary removal from campus, along with the Officers' invitation to return the following day, appears to be consistent with U.M.'s policy regarding "Immediate Summary Restrictions on Access to Campus." (*Id.* at 17 (stating: "Whenever it reasonably appears that the continued presence of any person constitutes . . . interference with . . . the orderly operation of the campus, restrictions on access to campus shall be summarily imposed[.]").) Here, Anderson violated campus policy by chewing tobacco, Jane Doe noticed and complained, the Officers approached him and requested his identity, and Anderson refused to provide it to them. Therefore, after violating policy and refusing to identify himself to campus police responding to a complaint, Anderson's continued presence would reasonably appear to constitute an interference with the orderly operation of campus.

hint in the record" here that the exclusion of Anderson was based on anything other than his admitted violation of the University's tobacco policy. *See id.* at 1046. That is, the Officers approached him to address the apparent violation of a campus policy. They did not approach him to address conduct—like the dissemination or receipt of ideas—that the Constitution protects. *See id.*

So, while U.M.'s campus may be generally open to the public, the Court fails to find either that Anderson had a constitutionally protected interest in remaining on campus after violating U.M. policy and refusing to identify himself, or in remaining on campus after the Officers discovered outstanding warrants for his arrest. Therefore, like *Souders*, because Anderson had no constitutionally protected interest in remaining on campus, his due process rights did not attach to his removal from it. Accordingly, the Court finds no error in the determination that Anderson fails to plead a claim for which relief may be granted under the Fourteenth Amendment.

### III. Negligence

Finally, Anderson asserts a negligence claim against the officers for treating as criminal what he characterizes as a "civil legal matter." (Doc. 15 at 11.) After finding that Anderson fails to allege Fourth and Fourteenth Amendment claims for which relief can be granted, Judge DeSoto recommends that the Court decline to

exercise supplemental jurisdiction over his common law negligence claim. (Doc. 11 at 11.)

Because Anderson does not specifically object to this recommendation, the Court reviews for clear error. Having done so, the Court finds no error, and it declines to exercise supplemental jurisdiction over Anderson's negligence claim. Anderson remains free to file his negligence claim in state court, as explained by Judge DeSoto in her F&R. (*Id.*)

## CONCLUSION

Accordingly, based on the foregoing reasons, IT IS ORDERED that:

(1) Judge DeSoto's Findings and Recommendation (Doc. 11) is ADOPTED IN FULL.

(2) Anderson's federal constitutional claims are DISMISSED for failure to state a claim on which relief may be granted.

(3) The Clerk shall enter, by separate document, a JUDGMENT OF DISMISSAL.

(4) Pursuant to Federal Rule of Appellate Procedure 24(a)(4)(B), it is CERTIFIED that an appeal would not be taken in good faith.

Dated this 27th day of November, 2019.

*/s/ Dana L. Christensen*
Dana L. Christensen, Chief Judge
United States District Court